Louis Martiniello *vs.* Sarah Bamel.

Suffolk.    January 22, 1926. — February 25, 1926.

Present: Rugg, C.J., Crosby, Pierce, Carroll, & Sanderson, JJ.

*Contract*, Rescission or modification for mutual mistake, Consideration.

At the trial of an action for an amount beyond a contract price agreed upon between the plaintiff and the defendant for certain excavations and masonry work to be done by the plaintiff for the defendant, there was evidence warranting findings that the contract required that the work should be done "according to plan and satisfactory to the Building Department of the city of Boston"; that the building laws of Boston would not permit a foundation to be put upon a fill but required that excavations go through a fill down to solid ground; that, after the plaintiff began work, he discovered that the land was filled; that neither of the parties knew that the land had been filled and that both of them believed that it was natural soil at the time the contract was made; that when the true character of the soil was discovered, both parties recognized that the written contract had been made under a mistake of fact as to the nature of the ground on which the work was to be done and consequently as to the amount of excavation that would be required; that the defendant then said, "You go ahead, do the work and after you done tell me what it is.   We will set down and figure out what it is. I will pay you whatever it will come."  *Held*, that

(1) The words and actions of the parties might have been found to constitute the substitution of a new for an earlier contract;

(2) Recognition of mutual mistake by both parties and the rescission of the old contract for that reason afforded consideration for a contract by the defendant to pay a sum for the work described in the contract beyond the price therein named.

CONTRACT.    Writ dated December 6, 1922.

The declaration as amended was in two counts.    The first count was for $2,400, the contract price stated in a contract in writing for the excavating of a cellar and the erection of foundation walls and building pier footings upon premises at the corner of Washington Street and Vassar Street in that part of Boston called Dorchester, and $1,100 for extra work, with a credit given of $2,400.    The second count was on an account annexed for "labor and material in excavating cellar, building foundation walls of stone masonry, and building pier footings to receive columns, $2,900; extra work done

at Washington Street and Vassar Street, Dorchester, $600; total $3,500; credit on account $2,400; balance due $1,100."

There was a trial in the Superior Court before *Flynn*, J. Material evidence is described in the opinion. The defendant moved for a verdict in his favor. The motion was denied. There was a verdict for the plaintiff in the sum of $1,259.63. The defendant alleged exceptions.

The case was submitted on briefs.

*M. B. Holsberg*, for the defendant.

*D. W. Corcoran*, for the plaintiff.

RUGG, C.J.  The plaintiff made a contract in writing with the defendant through her agent, for a specified gross price, "to excavate the cellar for a block of stores . . . to build foundation walls . . . and . . . all pier footings to receive columns. All work shall be done according to plan and satisfactory to the Building Department of the City of Boston. . . . "

There was evidence tending to show these facts: — The building laws of the city of Boston would not permit a foundation to be put upon a fill but required that excavation go through a fill down to solid ground. The plaintiff did not examine the land before signing the contract but settled the price according to the plans. After the contract was signed, the plaintiff talked with the agent of the defendant about the kind of land on the lot. After the plaintiff had begun work upon his contract, it was discovered that the land of the defendant was filled and that substantial additional excavation would be required to comply with the building laws. Thereupon the plaintiff saw the agent of the defendant and this talk occurred: — The plaintiff said, "That is not the ground that you expected to get here?" The agent replied, "No, . . . I am surprised myself . . . I didn't know [it] was filled . . . . I don't know who filled it." The plaintiff then said, "What do you want me to do? You want me to do the same price I am doing on the contract?" The agent replied, "No . . . I am not that kind of man. I won't see you lose . . . . You go ahead, do the work and after you done tell me what it is. We will set down and figure out what it is. I will pay you whatever it will come."

To this the plaintiff assented and completed the work. After the work was finished the parties met again and agreed upon the amount of compensation due to the plaintiff. This evidence was more or less contradicted in material particulars by the agent of the defendant, but it might have been believed by the jury. The single question presented is whether there was error in the denial of the defendant's motion for a directed verdict in her favor.

A finding would have been warranted on the evidence that neither of the parties knew that the land had been filled and that both of them believed that it was natural soil at the time the contract was made, and that when the true character of the soil was found out both parties recognized that the written contract had been made under a mistake of fact as to the nature of the ground on which the work was to be done and consequently as to the amount of excavation that would be required. Whether the facts would have justified the conclusion that the contract could have been set aside on the principle declared in *Long* v. *Athol*, 196 Mass. 497, 501, 502, with reference to a somewhat similar contract, is not presented on this record. But the testimony in its aspect most favorable to the plaintiff shows that the parties, in their negotiations subsequent to the discovery that the earth was filled instead of natural ground, treated the mistake as to the nature of the ground as one that was mutual and one that went to the essence of the contract. In the subsequent conferences the plaintiff put his contention on this mistake and the agent of the defendant recognized and accepted that mistake as the sufficient reason for future arrangements. The further inference might have been drawn that, having thus agreed in their minds upon this common basis for negotiation, the parties rescinded the original contract and agreed that the plaintiff should proceed to finish all the required excavation and work upon the understanding that the contract price be treated as the reasonable price for doing the amount of work which would have been required had the land been solid ground as both parties originally supposed, and that the plaintiff should receive a reasonable price for the additional work required because the land had been

found to be filled, and that they met after the completion of the entire work, had an accounting together and agreed upon the amount due to the plaintiff. Whether the facts would have justified the conclusion that the original contract could have been set aside in equity on the principle of mutual mistake need not be inquired, because both parties acted upon the theory that there had been such mistake and that hence as matter of fair dealing the original contract ought to be modified and a new agreement made to govern their relations. The words and actions of the parties might have been found to constitute the substitution of a new for the earlier contract.

Recognition of mutual mistake by both parties and the rescission of the old contract for that reason affords consideration for the contract on which the second count of the declaration on an account annexed is founded. *Long* v. *Athol, supra. O'Brien* v. *Peck,* 198 Mass. 50, 56. *Hanson & Parker, Ltd.* v. *Wittenberg,* 205 Mass. 319, 326. *Rowe* v. *Peabody,* 207 Mass. 226, 234. *Owen* v. *Button,* 210 Mass. 219, 221. *Flaherty* v. *Goldinger,* 249 Mass. 564, 567.

This conclusion in no way conflicts with the settled general principle that a promise to make additional payment to one for doing that which he was under a prior legal obligation to do is not binding for want of a valid consideration. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 194. The case at bar does not come within the limitation of that principle exemplified by cases like *Monroe* v. *Perkins,* 9 Pick. 298, and *Rollins* v. *Marsh,* 128 Mass. 116, to the effect that when a plaintiff, having entered into a contract to do certain work, refuses to proceed with it, and the defendant, in order to secure the actual performance of the work instead of a right to collect damages from the plaintiff, promises to pay him an additional sum, action lies to recover such additional sum upon the doctrine that there is a new consideration for such promise. The case at bar also is distinguishable from *Cavanagh* v. *Tyson, Weare & Marshall Co.* 227 Mass. 437, where the mistake was not recognized as existent by both parties and touched a matter collateral to the main undertaking, and from cases like *Stuart* v. *Cambridge,* 125 Mass. 102, *Winston* v. *Pittsfield,* 221 Mass. 356, and *Young* v.

*Holyoke,* 225 Mass. 140, where one has made a hard contract or a contract founded on his own mistake, not shared by the other party, and must be held to the performance of his obligation.

*Exceptions overruled.*