ALFRED A. MacLAREN *vs.* WINDRAM MANUFACTURING
COMPANY.

Suffolk.    May 22, 1934. — June 27, 1934.

Present: CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract*, Termination, Modification.    *Evidence*, Extrinsic affecting
writings.

At the trial of an action of contract, there was evidence that the plaintiff and the defendant made an oral contract whereby the defendant was to pay the plaintiff a certain commission on all sales of a certain fabric made by the defendant anywhere in the United States and Canada during a period of one year; that during the year the plaintiff performed the duties required of him under the contract; that, because of unavoidable delays in perfecting samples of the fabric for the trade, no commissions on sales accrued to the plaintiff until about the end of the first three months of the year; that after frequent controversies and discussions between the parties as to the payment of commissions to the plaintiff on sales made in the Boston territory, to which, the defendant contended, the plaintiff was not entitled, the defendant, at about the end of seven months of the year, refused to pay further commissions on sales in that territory; that the plaintiff thereupon stated that if the defendant meant to be fair to the plaintiff, the plaintiff should have an extension of the contract to compensate him for the first three months of the year and for his expenses incurred in his duties; and that a short time later the parties, without having discussed the subject of altering or cancelling the oral contract, made a contract in writing which did not state a date as of which it was to be effective and which provided for the payment to the plaintiff by the defendant of the same commission as before on all sales of the fabric by the de-

fendant in four States, not including Massachusetts, and also provided that it might be terminated by either party on a date which was three months after the expiration of the original year. The action was for certain sums which, the plaintiff alleged, were due to him from the defendant under the original oral contract. The issue in substance was whether the oral contract had been abrogated by the contract in writing. *Held*, that

(1) A finding was warranted that the contract in writing was intended as an extension of a part of the oral contract in order to compensate the plaintiff for the lack of commissions in the first three months of the original year;

(2) It could not properly have been ruled as a matter of law that the oral contract had been abrogated by the parties by the making of the contract in writing: that question was for the jury on the evidence;

(3) There was no merit in a contention by the defendant that evidence of the oral agreement and negotiations between the parties previous to the making of the contract in writing should have been struck from the record: it was a question of fact, whether the parties intended the contract in writing to embody their entire agreement or merely to supplement the oral contract previously made;

(4) A finding for the plaintiff was warranted.

CONTRACT. Writ dated February 4, 1930.

In his declaration, the plaintiff alleged a breach by the defendant of the oral contract of November 1, 1928, described in the opinion, in that the defendant had not paid the plaintiff "on all sales of said merchandise at said agreed price."

The action was tried in the Superior Court before *Bishop*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $6,890.68. The judge reported the action for determination by this court.

*C. C. Cabot*, for the defendant.

*L. J. Dunn*, for the plaintiff.

CROSBY, J. This is an action of contract by which the plaintiff seeks to recover damages for breach of an alleged contract. The case was tried in the Superior Court before a jury, and a verdict was returned in favor of the plaintiff in the sum of $6,890.68. The case is before this court upon a report by the presiding judge.

The report recites that a few days prior to November 1, 1928, the plaintiff suggested to the defendant, through its president, the manufacture of material for raincoats, and as a result of these conversations the parties on that date

entered into an oral contract by which it was agreed that the defendant should pay to the plaintiff a commission of ten per cent on all sales of raincoat fabrics made by the defendant anywhere in the United States or Canada, during the period of one year expiring October 31, 1929. Upon the making of the contract the plaintiff entered upon his duties and expended time and money on marketing the new raincoat material. Owing to the fact that experimentation was required before suitable materials were produced several weeks elapsed before samples were available for the trade, and as a result commissions did not accrue to the plaintiff until about February 1, 1929. During the spring of 1929 controversies arose between the plaintiff and the defendant company, acting through its president, over the payment of commissions to the plaintiff on certain material sold in the Boston territory on which, the defendant contended, the plaintiff was not entitled to a commission. Frequent discussions were had between the parties with reference to the terms of the plaintiff's oral contract with the defendant, and early in June, 1929, the president of the defendant company notified the plaintiff that the board of directors had instructed him to make no further payments to the plaintiff for goods sold in the Boston territory. The plaintiff thereupon replied to the effect that he was surprised that the president should so treat a salesman and permit the board of directors to ignore a contract which their president had made, and that if the president meant to be fair with the plaintiff rather than to attempt to take away part of his territory covered by the contract, he should give him an extension of time under the contract to compensate him for the period lost at the beginning of the term because of time necessarily consumed in perfecting the samples of merchandise, and to compensate him for travelling expenses and automobile expenses; the plaintiff contended that commissions up to then were scarcely enough to cover expenses. The president replied that he felt sure the board of directors would not extend the contract, at least so far as the Boston territory was concerned, but that he would take the matter up with them and see what he could do as to an extension for the rest of the country.

At a conference on June 11, 1929, the president submitted to the plaintiff a contract dated June 11, 1929, informing him that he had taken up the matter with the directors and that the best he could do was to get an extension for the States of New York, New Jersey, Pennsylvania and Maryland. The plaintiff asked for a day or two to consider the proposal and on June 14, 1929, accepted the same. Immediately after the plaintiff had introduced the contract dated June 11, 1929, the defendant moved that all testimony as to conversations leading up to the making of that contract be struck from the record. The judge denied the motion on the ground that no conversations had been admitted which led up to the making of that contract. At no time was the subject of altering or cancelling the oral contract discussed between the parties. Following the making of the contract dated June 11, 1929, the plaintiff continued as he had prior to June 11 to make frequent demands on the company for the payment of commissions alleged to be due on sales made in the Boston territory, and on or about August 15, 1929, he made a written demand upon the company for payment of said commissions. He continued until October 31, 1929, to sell goods in the New England territory, parts of the Middle West, and the States of New York, New Jersey, Pennsylvania and Maryland.

The contract dated June 11, 1929, is as follows: "WINDRAM MANUFACTURING CO., CRADLE CLOTH 3 Dorchester Street, South Boston, Mass. Tel. South Boston 2600. June 11, 1929. Mr. A. A. McLaren, 755 Boylston Street, Boston, Mass. Dear Sir: We will pay you 10% commission on all orders for Raincoat or Bathing Suit Fabrics, sold in New York, New Jersey, Pennsylvania, or Maryland, whether sent in by you or not. A duplicate copy of invoice on all above goods shipped to be mailed to you. This agreement may be terminated on Feb. 1, 1930, by either party, upon sixty days notice, in writing. Commissions will be due and payable as soon as order is received, and credit accepted. Payments of commissions to be made on the 1st and 15th of each month. Any commissions already paid on failures, or uncollectable

accounts, to be deducted from subsequent payments. Yours very truly, WINDRAM MANUFACTURING COMPANY RALPH W. LANE, President A. A. George, Treasurer Accepted by A. A. McLaren, Date, June 14, 1929." The defendant offered no evidence in proof of consent to rescission other than the contract dated June 11.

Before the case was submitted to the jury it was agreed. between the parties (1) that if the jury were not satisfied that the plaintiff and the defendant had entered into the oral contract declared upon in the plaintiff's declaration, then there should be a verdict for the defendant; (2) that if the jury were satisfied that the parties made the oral contract declared on, but that the parties intended to abrogate it by the contract of June 14, then the jury should return a verdict for the plaintiff in the sum of $181, plus interest from the date of the writ; (3) that if the jury were satisfied that the oral contract was made, and that the parties did not intend to terminate or abrogate it by the contract of June 14, then the jury should return a verdict for the plaintiff in the sum of $5,580.47 plus interest from the date of the writ.

The defendant made certain requests for rulings in substance as follows: (1) Upon all the evidence the plaintiff is not entitled to recover any further commissions upon the sale of goods made by the defendant after June 14, 1929. (3) The contract of June 14, 1929, by necessary implication supersedes any previous contract between the parties relating to commissions on orders for fabrics which might have been made theretofore. (4) The plaintiff is not entitled to recover any commission on orders received by the defendant for fabrics after June 14, 1929, except for such material sold in New York, New Jersey, Pennsylvania and Maryland, or on orders obtained outside of these States which were sent by the plaintiff. The case is reported to this court on the question whether or not it should have been ruled as matter of law on all the evidence that the contract dated June 11, 1929, in and of itself, terminated or abrogated the oral contract of November 1, 1928, such being the contention of the defendant, while the

plaintiff contended that it was a question of fact for the jury on all the evidence whether or not the written contract terminated or abrogated the oral contract.

Although in cases where the evidence is clear and unambiguous it is the duty of the court to decide as matter of law whether or not a contract has been terminated or abrogated, it does not appear that such duty existed in the present case. No such patent inconsistency exists between the terms of the later and earlier agreements as to justify the application of the rule of implied rescission as matter of law. Am. Law Inst. Restatement: Contracts, § 408. Black, Rescission and Cancellation, § 530. Page on Contracts, § 2489 *et seq.* See cases cited in 13 C. J. pages 603, 604. In the present case the subsequent written contract is clearly susceptible of the construction that it was intended to be an extension of the period covered by the oral contract, not as to the whole territory but as to certain named States. Nowhere in the written contract is it stated when it is to be effective. It is as inferable that it was an extension of the original agreement as that it was to supersede it. From the evidence of the conversations at the conferences between the parties preceding the execution of the written agreement, a finding was warranted that the written agreement was intended as an extension of the original agreement to compensate the plaintiff for the period of time lost by him at the beginning of the term due to unavoidable delay in perfecting the samples of merchandise. It is manifest from the evidence that the plaintiff relied upon the original oral agreement. Although the written agreement and the other evidence were susceptible of the inference that the written agreement was in substitution of the oral one, yet the form of the contract dated June 11 was not such as to be conclusive of the matter and finally determinative of the intent of the parties, which was the important issue to be decided. We are of opinion that the question whether the oral agreement had been rescinded was properly submitted to the jury. *Carnig* v. *Carr*, 167 Mass. 544, 548. *Hanson & Parker, Ltd.* v. *Wittenberg*, 205 Mass. 319, 326, 327. *Noyes* v. *Noyes*, 224

Mass. 125, 132.  *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246, 253, 254.

The further contention of the defendant that the existence of the written agreement rendered the former oral agreement between the parties invalid is disposed of by the cases above cited.  This contention apparently is based upon the parol evidence rule that where parties have merged all prior negotiations and agreements in a writing, intending to make it the final statement of the entire transaction, evidence of such prior negotiations and antecedent agreements will be rejected as immaterial.  *Glackin* v. *Bennett,* 226 Mass. 316, and cases cited.  *Boston Consolidated Gas Co.* v. *Folsom,* 237 Mass. 565.  *Whitty Manuf. Co. Inc.* v. *Clark,* 278 Mass. 370, 374.  *Brookline* v. *Crane Construction Co.* 285 Mass. 558, 564.  The principles so annunciated in those cases are not applicable to the case at bar.  Whether the parties intended the writing to embody their entire agreement and to be in substitution of the original oral agreement or to be supplemental to the oral agreement was a question of fact to be determined from the conduct and language of the parties and all the circumstances.  *Harris* v. *Rickett,* 4 H. & N. 1.  *Corey* v. *Woodin,* 195 Mass. 464, 470.  Am. Law Inst. Restatement: Contracts, §§ 237, 240.

The case of *Rosenfeld* v. *Standard Bottling & Extracts Co.* 232 Mass. 239, and other cases cited by the defendant are distinguishable from the case at bar.

The defendant's exception to the refusal to grant its requests for rulings cannot be sustained.  As the case was properly submitted to the jury, the entry must be

*Judgment for the plaintiff on the verdict.*