## E. C. GERHARD BLDG. CO. et al. v. CITY OF DALLAS et al.

## CITY OF DALLAS v. MOORE et al.

(Circuit Court of Appeals, Fifth Circuit. April 1, 1924.)

### No. 4158.

**1. Schools and school districts ⬳80(1)—Contracts by board of education need not be executed by mayor and auditor under charter of Dallas, Tex.**

Contracts by board of education of city of Dallas, Tex., for construction of school building, need not be executed by mayor and auditor, under Dallas City Charter, art. 14, § 42, in view of article 3, § 1, and article 5, § 1; latter section giving board of education power to contract for and construct school buildings.

**2. Schools and school districts ⬳85—City board held not to have breached school building contract by failing to enforce architect's ruling that workmen of another contractor should be removed.**

Board of education did not breach its contract with contractor on school building by failure to enforce architect's ruling that workmen of another contractor should be removed from building, contracts of various contractors providing that they should employ competent workmen and that architect should have right to cause undesirable workmen to leave premises; the only reason for lack of harmony between employees being that some were union and some nonunion men.

**3. Schools and school districts ⬳85—Failure of subcontractors to complete contracts assigned to city did not release contractor from liability to city.**

Where subcontractors on school building terminated their contracts before abandonment of contracts by principal contractor, latter could not, some two weeks later, revive subcontracts without consent of subcontractors by assigning them to city, and failure of subcontractors to complete their contract did not release principal contractor from liability.

**4. Schools and school districts ⬳85—Privity of contract held not to exist between subcontractor and city.**

Where subcontractor did not make delivery of material required under his contract with principal contractor, and did not ratify assignment of his contract to city by principal contractor, when he abandoned work and thus failed to meet conditions on which assignment would have become effective, there was no privity of contract between him and city.

**5. Jury ⬳12(4)—Reviewing court cannot enter judgment for damages where uncertain.**

It is only where action is brought for sum certain, or which can be rendered certain by computation, that judgment for damages can be entered by court without a jury, under Const. U. S. Amend. 7, and liquidated damages of $25 a day for delay in construction of school building was not a sum certain, where period of delay depended on facts.

In Error and Cross-Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Suit by the city of Dallas against the E. C. Gerhard Building Company and others, in which Ira T. Moore and another intervened. From an adverse judgment against them, defendants bring error; and from a judgment against it, the city assigns cross-error. Judgment against defendants affirmed, judgment against city reversed, and cause remanded.

W. T. Henry, of Dallas, Tex., and John T. Suggs, of Denison, Tex., for plaintiffs in error.

James J. Collins and Allen Charlton, both of Dallas, Tex. (Hugh S. Grady, of Dallas, Tex., on the brief), for defendants in error.

James J. Collins, and Allen Charlton, both of Dallas, Tex., for cross-plaintiff in error.

William H. Flippen and Carl B. Callaway, both of Dallas, Tex., on the brief, for cross-defendants in error.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

BRYAN, Circuit Judge. This is a suit by the city of Dallas for breach of contract for the construction of a public school building. The defendants are the contractor and the sureties on its bond. The contract was entered into on May 12, 1919, and abandoned by the contractor on February 9, 1920, before the building was completed. The city completed the building, and seeks to recover the cost in excess of the contract price, and in addition $25 per day, stipulated in the contract as liquidated damages for the period of delay beyond March 15, 1920.

Three other separate contracts were entered into at about the same time with other contractors for the electrical work, the plumbing, and the heating system. All the contracts were executed on behalf of the city by its board of education, and each of them contains provisions to the effect that the contractor should employ only competent and skilled workmen, who would work in harmony with the employees of other contractors and subcontractors; that the architect should have the right to cause any workman found to be undesirable to leave the premises, and, upon the architect's certificate that any contractor had abandoned his work, or willfully neglected or refused to comply with his contract, that the city might take charge of the building and complete it. The contract for the electrical work was awarded to J. M. Johnson & Co. Prior to awarding the principal contract, the secretary of the board of education inquired of the Gerhard Company what its policy would be as to giving employment to local workmen, and in reply that company wrote that so far as possible it would employ local workmen, and inclosed a copy of a letter it had written to a labor union organization which contained the statement that it would employ union men.

The work progressed satisfactorily until about January 20, 1920, when Johnson & Co. put nonunion men on the building to do the electrical work. Immediate objection was raised by some of the union workmen of the Gerhard Company, and the architect ordered Johnson & Co. to withdraw their employees; but Johnson & Co. refused to comply, and an appeal was made to the board of education, who declined to interfere. Within a few days the Gerhard Company ceased all efforts to carry on any work, and on February 9 gave formal notice to the board of education that it would not proceed further with the principal contract. The architect thereupon formally certified to the board that this contractor had either abandoned the work or was willfully

neglecting or refusing to carry it on. On February 23 the Gerhard Company assigned various contracts with its subcontractors to the city, which agreed to accept the assignment and assume the obligations of that company, upon the condition, however, that the subcontractors affected should complete their contracts, or ratify the assignment and bind themselves to perform their contracts. John L. Smith and Ira T. Moore were two of these subcontractors, but neither had completed his contract, or ever ratified the assignment. For work already done, the building company owed Smith $1,919.54 and Moore $1,047.29, and interventions for these amounts were filed, as authorized by the Texas practice. See Smalley v. Taylor, 33 Tex. 668.

The court charged the jury that the Gerhard Company breached its contract, and it and its sureties were liable to the city for any increased cost of the building over the contract price. Some question is raised as to the sufficiency of the evidence to show separately the cost of the extra work and the cost of work and material covered by the contract; but separate accounts were kept, and the jury were carefully instructed not to include in their verdict anything for extra work. There is no need to state the evidence on this question, since it is not pointed out wherein the judgment is anywise excessive, and we are unable to find affirmatively that it is. The court further charged the jury to find against the city on its claim of $25 per day as liquidated damages, and on the interventions to find for Smith against the defendants, and for Moore against the city A verdict was rendered accordingly. and judgment was entered thereon, the amount of the judgment in favor of the city being $63,584.47, with interest from April 30, 1921, the date the building was completed.

The defendants assign error and contend: (1) That the contract was not binding, because it was not executed on behalf of the city by the mayor and auditor, in accordance with section 42 of article XIV of the city charter; and (2) that the contract, if valid, was breached by the city, because, by its failure to enforce the architect's ruling that Johnson & Co's workmen should be removed from the school building, it was impossible for the defendant contractor to retain its workmen and complete its contract, and also because the architect's certificate did not show abandonment, but only a temporary neglect or refusal to comply with the contract; and (3) that the failure of the subcontractors Smith and Moore to complete their contracts, which had been assigned to the city constituted breaches of such contracts, and released the defendants from liability.

The city by cross-assignments contends that the trial court erred in charging the jury to find against it in favor of the subcontractor Moore, and also in refusing to charge the jury to find in its favor liquidated damages of $25 per day for delay.

[1] 1. Section 42 of article XIV of the city charter contains a provision that no contract shall be entered into by the board of commissioners until after an appropriation has been made, and in that connection occurs the provision relied upon by the defendants in these assignments to the effect that no contract shall be binding on the city unless it has been signed by the mayor and countersigned by the auditor.

Section 1 of article III requires all powers conferred on the city, unless otherwise provided, to be exercised by the mayor and board of commissioners. Section 1 of article V places the public schools under the management and control of a board of education, which is given authority to provide, contract for, and construct necessary school buildings. We think, therefore, that section 42 of article XIV applies only to contracts with the board of commissioners, and has no application to contracts made by the board of education. The latter board, being given the power to contract for and to construct school buildings, necessarily must have the incidental power to evidence their contracts in writing. It has been so held by the Court of Civil Appeals in United States Fidelity & Guaranty Co. v. Burton Lumber Co., 221 S. W. 699.

[2] 2. There has been much discussion in brief and oral argument of the question whether a municipality may or may not lawfully contract for the employment of union or nonunion labor. We are clear that the question does not arise in this case. In the main contract, as well as in the subsidiary contracts, it was left entirely to the discretion of the contractor to employ union or nonunion labor, or both. The city did no more than require the employment of workmen who were competent and skilled, and who would work in harmony with the workmen of other contractors and subcontractors. The secretary of the board of education did not request the defendant contractor to do anything, but before the contract was awarded merely inquired whether local men would be given employment. The reply answered the inquiry, but went further and volunteered the information that some of the local men would be union men. This voluntary statement, made during preliminary negotiations, could not affect the terms of the written contract. It was beyond the power of the architect to order Johnson & Co.'s workmen to quit, unless they were incompetent or refused to work in harmony with other workmen. It is not claimed that they were incompetent, and it hardly can be maintained that they refused to work in harmony with the Gerhard Company's workmen, inasmuch as the reverse is true. It is unnecessary to determine whether the architect's formal certificate is technically sufficient to show an abandonment of the principal contract, since the undisputed fact is that the work was abandoned before the certificate was issued.

[3] 3. When, on February 10, the principal contract was abandoned, the subcontracts of Smith and Moore were terminated. The principal contractor could not, some two weeks later, revive the subcontracts, without the consent of the subcontractors. Such consent was not given, and the result is that the defendants were correctly held liable upon both interventions.

[4] We are of opinion that the first cross-assignment of the city is well taken. The subcontractor Moore did not make delivery of materials required under his contract with the Gerhard Company, and did not ratify the assignment of his contract to the city, and thus he failed to meet the conditions upon which the assignment would have become effective, and there never arose any privity of contract between him and the city.

[5] The other cross-assignment, to the effect that the city should have been allowed liquidated damages, is made upon the condition that this

court render judgment for it, covering the whole period of delay in the completion of the building. That is not a fixed period. It depends upon facts. A jury might well determine that the building should have been completed within less time than actually was taken. This element of uncertainty as to time necessarily renders the amount uncertain. It is only where an action is brought for a sum certain, or which can be rendered certain by computation, that judgment for damages may be entered by the court without a jury under the Seventh Amendment. Thorpe v. National City Bank (C. C. A.) 274 Fed. 200. As this court is without power to enter judgment for the amount involved this assignment will not be further considered.

The judgment is affirmed upon the original writ of error, and, as to the judgment of Moore against the city, is reversed on the cross-writ of error, and the cause is remanded for further proceedings not inconsistent with this opinion.