AMSCO, INC. *vs.* RUDOLPH FOZE.

Hampden.  November 14, 1979. – December 14, 1979.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Guaranty.  Payment.*

Where the president and sole stockholder of a corporation undertook in his individual capacity to guarantee payment for materials bought from a supplier, his liability for future corporate debts ended when he sold the corporation and the successor owner signed an identical agreement with the supplier; subsequent corporate payments to the supplier were applicable to the debts in the order in which they were incurred. [797-798]

CIVIL ACTION commenced in the District Court of Springfield on November 13, 1975.

On transfer to the Superior Court the case was heard by *Simons, J.,* on a master's report.

*John F. Wagner* for the defendant.

*Michael G. West,* for the plaintiff, submitted a brief.

KASS, J.  These cross appeals raise as a primary question the scope of an individual's guaranty of corporate trade debts after he has ceased active participation in

the corporate enterprise. A secondary question concerns the appropriate order in which funds are to be applied to the reduction of corporate debt.

For many years, while Rudolph Foze was its sole stockholder and president, Lawrence Heating, Inc. (Lawrence), bought sheet metal and other materials from Amsco. On January 3, 1973, Foze, as president and treasurer of Lawrence, and in an individual capacity, signed a printed document furnished by Amsco entitled "Credit Information and Agreement." Most of that document consisted of credit information about Lawrence and Foze, who was listed as "owner" of the corporation. By the printed terms of that document, its signatories undertook to pay or guarantee payment for materials which Amsco furnished.

Subsequently, Foze sold the business to a senior employee, James McNeill, who became president of Lawrence and assumed responsibility for its management. To the degree that, as a master found, the arrangements for the sale of the business were "very informal," that informality is immaterial to the resolution of the questions presented. It is sufficient for our task to know, as the master further found, that Amsco was aware of the change in control of Lawrence and that on February 6, 1974, Amsco secured from the corporation and McNeill a fresh "Credit Information and Agreement." Save for a minor change in type composition and the addition of a reference to a Connecticut statute, the printed form was the same as that which Foze had signed on behalf of Lawrence thirteen months earlier. On this fresh credit agreement McNeill is listed as owner of the company, and he signed the document as president of Lawrence and individually. Neither the name nor signature of Foze appears anywhere on the later credit agreement; he did not, however, expressly notify Amsco that he would not be liable for any future debts of Lawrence.

Where, as here, the duration and scope of the guaranty is not stated in writing, we must determine its reach

"from all the circumstances according to the reasonable inferences presumably entertained by normal business men." *Zeo* v. *Loomis,* 246 Mass. 366, 368 (1923). That the 1974 credit agreement which Amsco made with Lawrence had virtually the identical text as the one made about a year earlier and that it described McNeill as president and *owner* of the corporation are sufficient circumstances to establish a substitution of McNeill for Foze as the guarantor of trade debts of Lawrence incurred after February 6, 1974. *Kirtley* v. *C.G. Galbo Co.,* 244 Mass. 179, 182-183 (1923). See also *Bill* v. *Barker,* 16 Gray 62 (1860); *Friedman-Shelby Shoe Co.* v. *Davidson,* 189 S.W. 1029, 1031-1032 (Tex. Ct. App. 1916). Amsco's reliance on *Manufacturers' Fin. Co.* v. *Rockwell,* 278 Mass. 502 (1932), is misplaced because that case turns on the guarantor's agreement to submit any revocation in writing, a requirement Amsco did not impose on Foze.

On February 6, 1974, the day when Foze's guaranty of future debts of Lawrence ended, Lawrence had a balance due Amsco of $3,991.55. Although subsequent to that date, Lawrence made payment to Amsco in excess of that amount, the trial judge, adopting the master's report, concluded that the later corporate payments were applicable only to trade debts run up during the McNeill regime, and entered judgment accordingly. This was error. The judgment implies a determination that the parties intended that Foze would be liable for the balance due Amsco on February 6, 1974, for so long as Lawrence remained in business, an obviously unreasonable conclusion. It also violated the principle that payments received by a creditor should be applied against obligations in the order in which they are incurred. *Crompton* v. *Pratt,* 105 Mass. 255, 257 (1870). *Snell* v. *Rousseau,* 257 Mass. 559, 561-562 (1926). *Lampasona* v. *Capriotti,* 296 Mass. 34, 40 (1936). *Synthetic Materials Corp.* v. *Maciel, post* 943.

8 Mass. App. Ct. 799                                    799

The judgment is reversed, and a new judgment is to be entered that the defendant Foze owes Amsco nothing.

*So ordered.*